UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CARL LUCAS, JR. and BETTYE CLAY, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:12-CV-3654-B |
| ABBOTT LABORATORIES, | § § § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is a Motion for Leave to File a Second Amended Complaint filed by Plaintiffs Carl Lucas, Jr. and Bettye Clay (doc. 32). For the reasons stated below, Plaintiffs' Motion is **GRANTED IN PART and DENIED IN PART**.

I.

BACKGROUND[1]

Plaintiffs Carl Lucas, Jr. and Bettye Clay originally filed this products liability and negligence action against Defendant Abbott Laboratories and now non-parties Dr. Martin A. Menter, M.D., and Dr. Dustin B. Thrash, M.D., in Texas state court on December 29, 2011. Plaintiffs allege that Lucas suffered from a chronic skin condition called Hidradenitis Suppurativa ("HS"). Dr. Menter was Lucas' physician and a physician-principal in Texas Dermatology Associates ("TDA"). Plaintiffs allege that Dr. Menter prescribed Humira, a drug manufactured and marketed by Defendant Abbott Laboratories ("Abbott"), for an indication not approved by the federal Food and Drug

---

[1]The Court draws the factual background from the allegations contained in the pleadings and other relevant documents, as noted, in the record before the Court.

Administration, *i.e.* an "off-label" use. Plaintiffs contend Abbott promoted this off-label use to Dr. Menter in violation of Texas law, which in turn led to Dr. Menter prescribing Humira to Lucas for the off-label use and the alleged injuries detailed in the pleadings.

Plaintiffs' original counsel in this case, Thomas M. Corea, failed to file a requisite expert report detailing the allegations against Dr. Menter and Dr. Thrash within 120 days of filing suit pursuant to Texas law. *See* Tex. Civ. Prac. & Rem. Code § 74.351. Due to this misstep, Defendants Menter and Thrash moved to dismiss the claims against them with prejudice and Plaintiffs responded by filing a motion for nonsuit with prejudice as to Defendants Menter and Thrash, which the state court granted. Doc. 1, Notice of Rem. (Ex. 61). At that point, Abbott was the only Defendant and properly removed the case to this Court based on diversity jurisdiction on September 7, 2012. Abbott subsequently filed a Motion to Dismiss the Plaintiffs' First Amended Petition on October 15, 2012 (doc. 18). Also on October 15, 2012, Plaintiffs' lead counsel, Thomas M. Corea, was disbarred from the practice of law in the state of Texas for conduct unrelated to this action. Doc. 20, Joint Status Report. Due to Mr. Corea's disbarment, no response to Defendant's Motion to Dismiss was filed until Plaintiffs' new counsel filed a response (doc. 33) and the present Motion for Leave to File a Second Amended Complaint (doc. 32) on January 7, 2013. Defendant responded to Plaintiffs' Motion (doc. 36) and Plaintiffs replied (doc. 40), making Plaintiffs' Motion for Leave to File a Second Amended Complaint ripe for decision.

Plaintiffs seek leave to amend their pleading to adequately plead a cause of action against Abbott and also seek leave to join Texas Dermatology Associates as a non-diverse Defendant, thus destroying diversity jurisdiction and necessitating remand of this action. The Court will separately analyze each request pursuant to the applicable legal standard.

## II.

## LEGAL STANDARD

A.    *Leave to amend pleading*

Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Although leave to amend "is by no means automatic," *Little v. Liquid Air Corp.*, 952 F.2d 841, 845-46 (5th Cir. 1992), courts should only deny leave for a substantial reason such as "bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Goldstein v. MCI Worldcom*, 340 F.3d 238, 254 (5th Cir. 2003). Courts should also consider the factors of judicial economy and the most expeditious means to resolve the case on its merits. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). The final decision to grant or deny leave to amend "lies within the sound discretion of the district court." *Little*, 952 F.2d at 846.

B.    *Leave to join non-diverse party*

When presented with a proposed amendment to add a non-diverse party that would destroy federal subject matter jurisdiction, the district court must scrutinize such amendment more closely than an ordinary amendment. *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 679 (5th Cir. 2013). "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). "The court should use its discretion in deciding whether to allow that party to be added." *Priester*, 708 F.3d at 679 (quoting *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)) (internal quotation omitted). Courts in the Fifth Circuit use the

following factors, first enunciated in *Hensgens*, in determining whether to permit joinder of non-diverse parties: "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Id.* (quoting *Hensgens*, 833 F.2d at 1182).

## III.

## ANALYSIS

A.    *Leave to file Second Amended Complaint*

Under Texas law, there is a rebuttable presumption of non-liability in a products liability action against a manufacturer regarding a pharmaceutical product if, *inter alia*, the warnings accompanying the product were approved by the United States Food and Drug Administration ("FDA"). Tex. Civ. Prac. Rem. Code. § 82.007(a). In order to rebut the presumption, a plaintiff must allege facts sufficient to establish one of the exceptions in Section 82.007(b). Here, Plaintiffs seek leave to file a Second Amended Complaint because the First Amended Petition, filed by Plaintiffs' disbarred prior counsel, "inadequately pleads claims of 'off-label' drug use and promotion" under the statutory exceptions in 82.007(b)(3) and (4). Doc. 32, Pls. Mot. at 1. The relevant provisions of 82.007(b) are set forth below:

> (b) The claimant may rebut the presumption in Subsection (a) as to each defendant by establishing that: . . .
>
> (3)(A) the defendant recommended, promoted, or advertised the pharmaceutical product for an indication not approved by the United States Food and Drug Administration;
> (B) the product was used as recommended, promoted, or advertised; and
> (C) the claimant's injury was causally related to the recommended, promoted, or advertised use of the product;

(4)(A) the defendant prescribed the pharmaceutical product for an indication not approved by the United States Food and Drug Administration;
(B) the product was used as prescribed; and
(C) the claimant's injury was causally related to the prescribed use of the product.

Tex. Civ. Prac. & Rem. Code § 82.007(b).

Defendant argues that the Court should deny Plaintiffs' Motion for Leave to File a Second Amended Complaint because Plaintiffs' attempt to invoke a statutory exception under either Section 82.007(b)(3) or (4) is futile. When determining if a proposed amendment is futile, and thus grounds for denial of a motion for leave to amend, courts apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). To survive such a motion under Rule 12(b)(6), and here to demonstrate the claims are not futile, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The Court first analyzes the proposed Second Amended Complaint as it pertains to the exception in Section 82.007(b)(3). Section 82.007(b)(3) requires Plaintiffs to plead sufficient facts establishing that: (A) Abbott promoted Humira to Lucas' prescribing physician for an indication not approved by the FDA (an "off-label" use); (B) Lucas used Humira for that off-label use; and (C) Abbott's off-label promotion caused the prescribing physician to prescribe the drug to Lucas for that

off-label use. *See Murthy v. Abbott Laboratories*, 4:11-CV-105, 2012 WL 6020157, at *3 (S.D. Tex. Dec. 3, 2012); *see also* Tex. Civ. Prac. & Rem. Code § 82.007(b)(3). Defendant argues Plaintiffs have failed to offer anything but conclusory allegations as to the first and third elements of the exception and, as such, the Motion for Leave should be denied as the proposed amendment fails to plead a claim for which relief may be granted. Plaintiffs respond that the allegations in the proposed Second Amended Complaint more than adequately allege a plausible off-label promotion and marketing claim, as well as causation due to Abbott's off-label promotion. Plaintiffs direct the Court to paragraphs 3-4, 16-25, 30-32, and 50-51 of the proposed Second Amended Complaint. Doc. 40, Pls. Reply at 3. Plaintiffs also aver that Defendant's demand for precise factual pleading is impossible without the aid of discovery and not required by Rule 8 or the plausible pleading standard outlined in *Twombly* and *Iqbal*.

As for the first element, that Abbott promoted Humira to Lucas' prescribing physician for an indication not approved by the FDA (an "off-label" use), Plaintiffs allege in their proposed Second Amended Complaint that Humira has never been approved for the treatment of HS (¶ 35), that Abbott strategically promoted off-label uses of Humira through "so called" clinical trials (¶¶ 18-19), that Abbott retained Dr. Menter as a chief investigator for such trials and paid him to recommend, enroll, and maintain patient participation in clinical trials for Humira (¶ 20). Plaintiffs summarize these allegations by stating that "Abbott's unlawful conduct in recommending, promoting, or otherwise advertising Humira to Dr. Menter for the treatment of chronic HS, a non-FDA approved indication," meets the first element of the statutory exception in Section 82.007(b)(3). Doc. 32-1, Pls. Prop. Sec. Am. Comp. ¶ 50.

Defendant counters that there are two types of FDA approval, marketing approval and

investigative approval. Defendant argues that its alleged activities sponsoring clinical trials with Humira were to study indications that were given investigational approval by the FDA, such as for treatment of HS. Thus, Defendant argues that sponsoring such studies was not "promotion" of Humira for an indication not approved by the FDA. But in analyzing Plaintiffs' proposed Second Amended Complaint under Rule 12(b)(6), "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). Here, Plaintiffs allege Humira was never approved, in any capacity, by the FDA to treat HS. Doc. 32-1, Pls. Prop. Sec. Am. Comp. ¶ 35. Because at this stage of litigation the Court must take Plaintiffs' version of the facts as true, the Court determines that the allegations in Plaintiffs' proposed Second Amended Complaint plausibly allege the first element of the statutory exception in Section 82.007(b)(3)(A).

Defendant does not dispute that Plaintiffs have adequately alleged the second element, that Lucas used Humira for the prescribed "off-label" use. Defendant instead focuses on the third element, that Abbott's off-label promotion caused the prescribing physician to prescribe the drug to Lucas for the off-label use. *See* Tex. Civ. Prac. & Rem. Code § 82.007(b)(3); *see also Murthy,* 2012 WL 6020157, at *3. Defendant argues that Plaintiffs only speculate, without factual support, that it was Abbott's promotion of Humira that caused Dr. Menter to prescribe Humira to Lucas. In addition to the allegations outlined above, Plaintiffs allege that Dr. Menter "was a paid agent of Abbott during the course of his clinical investigations of Humira for treatment of HS . . . [and] he would have had an express financial incentive to aggressively downplay the risk of side effects to [Lucas]." Doc. 32-1, Pls. Prop. Sec. Am. Comp. ¶ 21. Plaintiffs urge the Court to consider that discovery has yet to take

place, thus making detailed allegations about exactly how Abbott's promotion specifically caused Dr.

Menter to prescribe Humira to Lucas impossible.

Taking Plaintiffs allegations as true, as the Court must at this stage, the Court determines

that Plaintiffs have plead sufficient factual content to allow the court to "draw the reasonable

inference" that Abbott's off-label promotion caused Dr. Menter to prescribe Humira to Lucas. *See*

*Iqbal*, 556 U.S. at 678. Therefore, based on the foregoing, the Court concludes Plaintiffs have

adequately plead an exception to the presumption of non-liability contained in Section 82.007.

Because there is no substantial reason to deny leave to amend, the Court determines that in the

interests of justice Plaintiffs' Motion for Leave to File a Second Amended Complaint is hereby

**GRANTED** to the extent the proposed Second Amended Complaint alleges an exception to the

statutory presumption of non-liability contained in Section 82.007(a).[2]

B.      *Leave to join non-diverse party*

In addition to seeking leave to file its Second Amended Complaint, Plaintiffs seek leave to

join Texas Dermatology Associates ("TDA"), Dr. Menter's professional practice, as a defendant in

this action. The Court's subject matter jurisdiction in this case is based on diversity jurisdiction

pursuant to 28 U.S.C. § 1332. Because TDA is a resident of Texas, joinder of TDA would destroy

this Court's subject matter jurisdiction. When joinder of a non-diverse party will destroy subject

matter jurisdiction, "the court may deny joinder, or permit joinder and remand the action to the

State court." 28 U.S.C. § 1447(e). When considering whether to allow such joinder, the Court is to

---

[2]At this time, the Court need not address Plaintiffs' alternative argument that the proposed Second
Amended Complaint adequately pleads an exception under Section 82.007(b)(4). *See Murthy,* 2012 WL
6020157, at *3 ("A plaintiff must sufficiently plead at least one of the statutory exceptions to Section
82.007(a) to state a claim and avoid dismissal.").

consider the following factors, identified in *Hensgens:* "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Priester*, 708 F.3d at 679 (quoting *Hensgens*, 833 F.2d at 1182) (internal quotation omitted).

The viability of a plaintiff's claim against the proposed non-diverse defendant is also a relevant consideration for the courts when analyzing the first and third *Hensgens* factors. *Anzures v. Prologis Texas I LLC*, 886 F. Supp. 2d 555, 564 & n.6 (W.D. Tex. 2012). As to the first factor, courts have held that when a plaintiff states a viable claim against a non-diverse defendant it is "unlikely that the primary purpose of the amendment is to destroy diversity jurisdiction." *McNeel v. Kemper Cas. Ins. Co.*, 3:04-CV-734, 2004 WL 1635757, at *2 (N.D. Tex. July 21, 2004). Likewise, the Fifth Circuit has stated that a plaintiff cannot be "significantly injured" by a court's refusal to permit a clearly meritless claim from proceeding against a non-diverse defendant. *Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 368 (5th Cir. 2010).

1.     Extent to which purpose of the amendment is to defeat federal jurisdiction

As for the first factor, Plaintiffs argue that because their claim against TDA is viable, the primary purpose of the proposed amendment is not to defeat diversity jurisdiction. Doc. 40, Pls. Reply 6-7. Defendant counters that it is clear Plaintiffs' sole purpose for seeking leave to add TDA is to defeat diversity jurisdiction and force remand. Defendant points to the fact that Dr. Menter and Dr. Thrash, who are physicians with TDA, were named as defendants in the original petition and a medical record attached to the original petition that named TDA as the doctors' practice group. Yet, Defendant argues, it was only after Dr. Menter and Dr. Thrash were dismissed and the case removed

that Plaintiffs sought leave to add TDA as a defendant, clearly demonstrating that the purpose of joining TDA is to destroy federal jurisdiction. Plaintiffs fail to offer any explanation as to why TDA was not joined from the beginning or demonstrate any efforts before the present motion to join TDA in this action.

When determining the extent to which the purpose of the proposed joinder of a non-diverse defendant is to defeat federal jurisdiction, courts reason that "waiting until shortly after removal to assert claims of which the plaintiff has been aware against a non-diverse defendant raises considerable suspicion concerning plaintiff's purpose." *Alba v. S. Farm Bureau Cas. Ins. Co.*, 3:08-CV-0842-D, 2008 WL 4287786, at *2 (N.D. Tex. Sept. 19, 2008). On the other hand, courts have also concluded that a proposed amendment sought shortly after removal is "not indicative of a plaintiff's intent to defeat diversity where it is clear that Plaintiffs sought to include that defendant in the litigation from the beginning." *Criswell v. Wal-Mart Stores, Inc.*, 1:09-CV-502, 2009 WL 5061826, at *2 (E.D. Tex. Dec. 15, 2009) (quotations and alterations omitted) (citing cases).

Here, there is undeniable evidence that Plaintiffs knew of TDA as a potential defendant in this case before suit was ever filed. The Original Petition listed then-defendants Dr. Menter's and Dr. Thrash's place of employment on Junius Street in Dallas, Texas. Doc. 1, Notice of Removal Ex. 1 (Orig. Pet. ¶¶ 6-7). The proposed Second Amended Complaint, which Plaintiffs now seek leave to file adding TDA as a defendant, lists TDA's place of business at the same Junius Street address. Doc. 32-1, Pls. Prop. Sec. Am. Comp. ¶ 8. Plaintiffs originally alleged Dr. Menter and Dr. Thrash practiced medicine in a professional practice, Pl. Orig. Pet. ¶ 10, but did not file suit against TDA or demonstrate any attempt to do so until filing the present Motion. Further, Plaintiffs' professional negligence claim directed at TDA is based *solely* on acts and omissions of Dr. Menter, an alleged

physician-principal of TDA. *Id.* ¶¶ 116-120.

Plaintiffs only argue that because their claim against TDA is viable, the primary purpose of their motion to join TDA is not to destroy diversity jurisdiction. But even assuming Plaintiffs' claim against TDA is not futile, which is uncertain due to possible *res judicata* issues based on the state court Nonsuit with Prejudice granted to Dr. Menter,[3] the first *Hensgens* factor nonetheless weighs against granting leave to add non-diverse Defendant TDA. On balance, Plaintiffs' argument that their claim against TDA is not futile cannot outweigh the plethora of undeniable evidence, drawn from Plaintiffs' own pleadings, that demonstrate Plaintiffs have known of TDA as a potential defendant from the beginning of this action. Thus, it is reasonable to conclude that Plaintiffs' purpose for joining TDA at this point is to defeat federal jurisdiction, regardless of whether the claim against TDA is in fact viable. *See Anzures*, 886 F. Supp. 2d at 564 ("Plaintiff's clear desire to litigate this case in state court, coupled with the fact that Plaintiff has known of [the proposed defendant's] identity and role in this case since the beginning of the case, all would trump the fact that the Proposed Amended Complaint asserts cognizable claims against [the proposed defendant].")). The first factor, therefore, weighs against granting leave to join TDA.

2.   Dilatoriness in seeking amendment

Plaintiffs filed their Original Petition in state court on December 29, 2011 and their First Amended Petition on August 17, 2012. Doc. 1, Notice of Removal. Both the Original and First

---

[3]Plaintiffs point to *Battaglia v. Alexander*, 177 S.W.3d 893, 902 (Tex. 2005) for the proposition that a doctor's professional association may be held directly liable for the actions of its physician-principal in the course of his employment. Therefore, Plaintiffs reason that a claim of professional negligence directed at TDA may survive despite the fact that the claim is based only on Dr. Menter's acts and omissions, who was dismissed with prejudice from this case in the state court before removal. The Court expresses no opinion as to the viability of Plaintiffs' claim against TDA and instead only assumes it is viable for purposes of the 28 U.S.C. § 1447(e) analysis.

Amended Petitions contemplate that Dr. Menter and Dr. Thrash "practice medicine in a professional practice located within Dallas County." Doc. 1, Notice of Removal (Orig. Pet. ¶ 10, First Am. Pet. ¶ 10). Thus, as discussed above, Plaintiffs have been aware of a claim against TDA, the professional practice associated with Dr. Menter and Dr. Thrash, from the beginning of the suit. Plaintiffs sought leave to add TDA as a Defendant on January 7, 2013, more than a year after filing their Original Petition and four months after removal to this Court. Given Plaintiffs' knowledge of TDA's identity and the facts underlying a cause of action from the outset, the Court determines Plaintiffs were dilatory in waiting to seek leave to add TDA as a defendant. *See Sterling v. Zurich Am. Ins. Co.*, 4:09-CV-510-A, 2009 WL 3415789, at *2 (N.D. Tex. Oct. 22, 2009) (Plaintiff that knew of proposed defendant's role at the outset of litigation but waited six and a half months after filing original petition and thus was dilatory in seeking leave to amend).

3.   No significant injury to Plaintiffs if joinder not allowed

Plaintiffs argue that if joinder of TDA is denied, Plaintiffs would have to prosecute their direct liability claim against TDA in state court parallel to this federal action, which would risk inconsistent results and constitute a financial hardship to Plaintiffs. *See Criswell*, 2009 WL 5061826, at *5 (determining that the potential for parallel proceedings weighs in favor of granting leave to join non-diverse defendant); *see also McNeel*, 2004 WL 1635757, at *4. Defendant counters that extra expense and parallel litigation do not constitute *significant* injury to Plaintiffs. *See Alba*, 2008 WL 4287786, at *2. Here, like in *Alba*, if the Court denies joinder, Plaintiffs will still be able to assert their claims against TDA in state court. Although Plaintiffs' claims against Abbott and TDA arise out of the same circumstances, besides the emotional distress claim, the claims are "separate causes of action that implicate[] different law and require different evidence." *Id.* Therefore, the Court

concludes Plaintiffs will not suffer *significant* injury if joinder of TDA is denied.

    **4.**    <u>Other factors bearing on the equities</u>

Plaintiffs argue throughout their Motion that "Plaintiffs should not be compelled to suffer the consequences of prior counsel's actions and omissions when he was engaged in a series of actions that led to his disbarment, federal bankruptcy filing, and criminal incarceration." Doc. 40, Pls. Reply at 10. Plaintiffs also aver that this case was removable only due to Mr. Corea's failure to file the requisite medical reports against Dr. Menter and Dr. Thrash within 120 days of filing suit. *Id.* While Plaintiffs' argument is compelling, and articulates what seems to be a legitimate injustice worked on Plaintiffs by their former counsel, it is well established that "if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice." *Link v. Wabash*, 370 U.S. 626, 633-34 n.10 (1962). The Supreme Court in *Link* continued, "keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant." *Id.* Plaintiffs voluntarily chose Mr. Corea as their attorney and "cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Id.*

On the balance of the factors outlined above, and in the Court's discretion, Plaintiffs' Motion for Leave to File a Second Amended Complaint is **DENIED** as to joining TDA as a Defendant in this action.

## IV.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Leave to File a Second Amended Complaint is **GRANTED IN PART and DENIED IN PART**. Plaintiffs' Motion is **GRANTED**

as to filing the Second Amended Complaint and **DENIED** as to joining non-diverse Defendant

Texas Dermatology Associates. Plaintiffs may file their Second Amended Complaint, revised to

comport with the above directives, within three business days of this Order.


SO ORDERED.

SIGNED: June 13, 2013.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE