# Exhibit K

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois 60654

Andrew Paul Bautista
To Call Writer Directly:
(312) 862-2078
andrew.bautista@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

February 12, 2014

**Via e-mail to asilverman@lawbylex.com**

Alexei M. Silverman
Law Offices of Alexei M. Silverman, LLC
5325 Westbard Ave., Suite 301
Bethesda, MD 20816

Re:   *Lucas v. Abbott Labs.*, No. 3:12-cv-03654-D

Dear Alexei,

I write in response to your letter regarding Abbott's Responses to Plaintiff's First Requests for Production of Documents and First Set of Interrogatories.

## Abbott's Reponses to Plaintiff's First Requests for Production of Documents

First, you inquire into the status of our document production. (Pl. Letter at 1) As we have discussed, our vendor is processing our initial production of approximately 110,000 documents in the agreed-upon format relating to Humira marketing and promotion, clinical trials, adverse event reporting, FDA communications, and product labeling and warnings. Our vendor currently estimates that they will deliver the initial production to us by Monday, February 17th. We will then conduct a quality check and send the production as requested to your colleague Eric Marye on an encrypted hard drive. We will follow up on our initial production with a second production relating to communications with Dr. Mentor.

Second, I briefly write to counter your representation that Abbott's production is "overdue." (Pl. Letter at 2.) During our telephone conference on September 23, 2013, I informed you that prior to production, we needed to have the court enter a protective order, and we needed to reach an agreement on the format of production. You informed me that you had not engaged a document vendor at that time, and would get back to me. The Court entered a protective order on October 21, 2013, but as of our telephone conference on December 13. 2013, you had not yet retained a document vendor. As you stated, we had our teleconference on the subject on January 16, 2013, and since that time have been working to get the collection ready for production.

Hong Kong    London    Los Angeles    Munich    New York    Palo Alto    San Francisco    Shanghai    Washington, D.C.

Alexei M. Silverman
February 12, 2014
Page 2


**Abbott's Reponses to Plaintiff's First Set of Interrogatories**

You have raised questions concerning three of our Responses to your Interrogatories. I address each of your questions below.

**INTERROGATORY NO. 3:** **Identify all current or former Abbott officers, executives, employees, sales representatives or agents that have had any communications with Dr. Alan Menter or any person at Texas Dermatology Associates related to the promotion, marketing, research, investigation, or prescription of HUMIRA®. In the case of former Abbott employees or agents, please furnish the best available last known address and contact information.**

**RESPONSE:** **Abbott objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and calls for information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks the identification of "all" current or former Abbott officers, executives, employees, sales representatives, or agents that have had "any" communications with Dr. Alan Menter and/or to the extent it seeks information relating to communications with persons at Texas Dermatology Associates other than Dr. Alan Menter. Subject to and without waiving these objections or its General Objections, Abbott responds that the following Abbott officers, executives, employees, sales representatives, or agents have had communications with Dr. Alan Menter relating to the promotion, marketing, research, investigation, or prescription of Humira: Wendy Bass, sales representative; Jerri Drake, sales representative; Kari Garis, sales representative; Donald Murray, sales representative; Rose Myers, sales representative; and Charles Schmitz, sales representative. Pursuant to Federal Rule of Civl Procedure 33(d), Abbott also refers to and incorporates the following documents from which the answer to the non-objectionable portion of this Interrogatory can be derived or ascertained: the documents to be produced by Abbott in response to Requests No. 3-5, 13, and 15 of Plaintiffs First Set of Requests for Production of Documents.**

First, you ask for the last known address and contract information for any of the above-mentioned sales representatives that may be a former employee of Abbott. (Pl. Letter at 2.) We are gathering that information and will supplement our Interrogatory Response. Second, you request the names of Abbott employees or officers that have had communications with Dr. Menter regarding "the status of clinical investigations of HUMIRA, medical research regarding the uses of HUMIRA, and marketing." We agree to supplement our Interrogatory Response with such information as well.

Alexei M. Silverman
February 12, 2014
Page 3


**INTERROGATORY NO. 6:** Please identify and describe all marketing programs, marketing plans, strategic plans, or other plans to promote and market the use of HUMIRA® for the treatment of HS, from its launch until the present.

**RESPONSE: Subject to and without waiving its General Objections, Abbott responds that it is not aware of the existence of any information or documents responsive to this Interrogatory as stated in its possession, custody, or control.**

First, you ask us to confirm whether Abbott considers "any responsive information or documents in the possession of AbbVie or that was transferred to AbbVie prior to its incorporation to be within Abbott's possession, custody or control." (Pl. Letter at 3.) Pursuant to a Separation and Distribution Agreement, Abbott transferred to AbbVie certain assets, including Humira, and as a result, AbbVie is now the holder of all rights, interests, obligations, or liabilities arising out of claims relating to Humira. AbbVie acknowledges and assumes full and complete financial responsibility for any and all contingent liabilities relating to Humira for this case in the place of Abbott. Abbott shortly will seek to substitute AbbVie as the sole defendant in this litigation pursuant to Federal Rule of Civil Procedure 25(c), and we will send you a draft of the motion asking for your consent. Accordingly, to simply matters, we will amend our discovery responses to be made on behalf of AbbVie after the substitution of parties is entered.

Second, you write that "Plaintiffs find it unlikely that there are no strategic plans or other documents (including sales and marketing plans) that assess the potential market of use of HUMIRA to treat HS." (Pl. Letter at 3.) We do not interpret your interrogatory, as written, to call for such information. Furthermore, such a request is irrelevant to this litigation because it calls for assessments of future potential markets and does not concern any marketing or promotion to Dr. Mentor, Mr. Lucas's prescribing physician, before or during Mr. Lucas's use of Humira. Such a request is also overbroad because it calls for extremely sensitive competitive information.

**INTERROGATORY NO. 8:** Identify all of your marketing or sales executives that have participated in any manner in promotion and marketing of the use of HUMIRA® for the treatment of HS, from its launch until the present, including but not limited to any employees or agents that have promoted the off-label use of HUMIRA® by dermatologists.

**RESPONSE: Abbott objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving**

Alexei M. Silverman
February 12, 2014
Page 4


**these objections or its General Objections, Abbott responds that it is not aware of the existence of any information responsive to this Interrogatory as stated in its possession, custody, or control.**

You write that "it has come to Plaintiff's attention that Abbott or AbbVie sales representatives have openly recommended to dermatologists that they utilize HUMIRA to treat HS." (Pl. Letter at 3-4.) You cite no source for this allegation, and based on our investigation to date, we are not aware of any such information. We will supplement our discovery requests to Plaintiffs to ask for the source of your allegation.

Sincerely,

Andrew Paul Bautista

cc:   Eric H. Marye
      I. Scott Lidji